REGIONS BANK *v.* Todd GRIFFIN

05-466                                                  217 S.W.3d 829

Supreme Court of Arkansas
Opinion delivered November 17, 2005

*Williams & Anderson*, PLC, by: *Peter G. Kumpe*; and *Friday, Eldredge & Clark*, by: *Robert S. Shafer* and *William A. Waddell, Jr.*, for appellant.

One brief only.

*Rose Law Firm*, by: *Garland J. Garrett* and *Richard T. Donovan*, for appellees/cross-appellants Faith Forest Partners, L.P., Griffin Chipping, Inc., Faith Forest Products, Inc., J.L. Griffin, Billy Griffin, Mike Griffin, Jerry Griffin, Gary Griffin and Ricky Griffin.

*Candace Franks* and *Quattlebaum, Grooms, Tull & Burrow PLLC*, *amicus curiae*.

DONALD L. CORBIN, Justice.  Appellant Regions Bank appeals from the judgment of the Union County Circuit Court denying its motion for a new trial on the inadequacy of damages awarded on its fraud claim against Appellee Todd Griffin. Regions argues that the undisputed proof showed that it was entitled to damages in the amount of $2,608,216.12 and that, accordingly, the trial court erred in upholding the jury's award of only $10.00. Regions had initially also appealed the judgment upholding the jury's verdict in favor of separate Appellees Faith Forest Partners, L.P.; Griffin Chipping, Inc.; Faith Forest Products, Inc.; J.L. Griffin; Billy Griffin; Mike Griffin; Jerry Griffin; Gary Griffin; and Ricky Griffin. One of the points in that appeal was whether the trial court erred in admitting into evidence a suspicious activity report filed by Regions as mandated by federal banking laws. Our jurisdiction was pursuant Ark. Sup. Ct. R. 1-2(b)(5), as the appeal presented a significant issue of law requiring further development or clarification. Prior to the appeal being submitted, however, we granted Regions's motion to dismiss the appeal against the separate Appellees. The remainder of the appeal is solely against Appellee Todd Griffin, who has elected not to file a brief or otherwise make an appearance in this court. We affirm.

At the heart of this case are a series of unauthorized draws on a line of credit secured by Griffin Chipping, Inc., and Faith Forest Products, Inc., collectively "the chip mill," from Regions in March 2000. Corporate resolutions for the chip mill, which were made part of the loan agreement, provided that three people were authorized to make draws on the line of credit: J.L. Griffin, CEO; Billy Griffin, President; and Kevin Martin, Secretary and Treasurer. On five separate occasions beginning in late June and continuing through late July 2000, Appellee Todd Griffin made draws on the chip mill's line of credit totaling $2,608,216.12. Todd is the son of Billy Griffin and the nephew of J.L. Griffin. At the time of the draws, Todd owned shares in the chip mill, but he was not an officer or a person otherwise authorized to make such draws.

During this time, Todd and his partner Gerald Barr had two outstanding loans with Regions. One was for the purchase of a sawmill located in Texas and the other was for the purchase of timber land in Louisiana, which Todd intended to sell immediately to another buyer at a profit. At the time of the draws, the sawmill was in financial trouble, and Todd was unsuccessful at obtaining a buyer for the timber land. Thus, he had little income to pay the loans that he had obtained from Regions. Some of the money that he obtained through his unauthorized draws on the chip mill's line of credit was ultimately used to pay for debts associated with the sawmill and the timber land.

The unauthorized draws were discovered by Kevin Martin when he was performing a banking reconciliation in July 2000. When he contacted Regions to inquire about the draws, he was informed that they had been made by Todd. Martin then contacted J.L. Griffin and informed him of Todd's actions. When confronted by his uncle, Todd confessed that he had taken the money.

Thereafter, talks began between Regions's personnel and the Griffins to resolve the situation. J.L. Griffin demanded that Regions put back the money Todd had been allowed to withdraw. Regions agreed to do so, after concluding that Todd had not been authorized to make the draws. Regions then attempted to get the Griffin brothers to buy Todd's failing sawmill and run it as part of their business. In exchange, Regions indicated that it would not pursue civil or criminal action against Todd. The Griffin brothers ultimately rejected Regions's proposal, as they concluded that the tax advantages were not that great.

Regions filed suit against Todd and the Griffin brothers on June 20, 2002. Specifically as to Todd, Regions asserted claims for breach of contract and fraud. Todd filed a *pro se* answer to Regions's complaint, but did not otherwise defend against the claims. However, Todd appeared at trial and was called as a witness by attorneys for the Griffin brothers. He testified that he had, on five separate occasions, obtained draws on the chip mill's line of credit in the amounts of $502,000; $258,995.12; $1,032,217; $299,004; and $516,000. He admitted that he was not authorized to make any of those draws and that he was solely responsible for taking the money.

At the conclusion of the trial, the jury found against Regions on its claims against the Griffin brothers, but found in favor of the bank on both its fraud and breach-of-contract theories against

Todd. The jury assessed damages in the amount of $2.6 million for breach of contract and $10.00 for fraud. Regions filed a timely motion for new trial under Ark. R. Civ. P. 59(a)(5), asserting that the amount of damages assessed on the fraud claim was erroneous. The trial court denied the motion, and this appeal followed.

For its sole point for reversal, Regions argues that the trial court abused its discretion in denying a new trial pursuant to Rule 59. It asserts that the undisputed proof showed that the amount of damages on the fraud claim was $2,608,216.12, which was the total amount of money obtained by Todd through his unauthorized draws on the chip mill's line of credit. While we do not disagree that the proof of the amount of damages was undisputed, we disagree that Regions is entitled to a judgment in this amount for the fraud claim.

As stated above, the jury was instructed on two theories of recovery for Regions's suit against Todd: breach of contract and fraud. The jury returned verdicts for the bank on both theories, awarding damages of $2.6 million for breach of contract, but only $10.00 for fraud. Pursuant to the doctrine of election of remedies, the jury should only have been instructed on one of these theories, as the damages and injury claimed on both were the same.

Under the doctrine of election of remedies, a plaintiff may proceed to trial on multiple theories of recovery for the same injury and may pursue multiple remedies up until the time that the jury is instructed, at which time it must be made clear that the jury is required to choose one or the other. *Pennington v. Harvest Foods, Inc.*, 326 Ark. 704, 934 S.W.2d 485 (1996); *Smith v. Walt Bennett Ford, Inc.*, 314 Ark. 591, 864 S.W.2d 817 (1993). The doctrine applies to *remedies*, not to causes of action, and bars more than one recovery on inconsistent remedies. *Wilson v. Fullerton*, 332 Ark. 111, 964 S.W.2d 208 (1998); *Smith*, 314 Ark. 591, 864 S.W.2d 817. Thus, even though the theories of recovery may not be inconsistent, such as those in contract and tort, recoveries on both theories are not allowed. *Smith*, 314 Ark. 591, 864 S.W.2d 817; *Thomas Auto Co. v. Craft*, 297 Ark. 492, 763 S.W.2d 651 (1989). In short, a plaintiff may pursue different theories of recovery; however, recovery on more than one theory for the same injury is not permitted. *Id.* "Such a double recovery would be unconscionable." *Id.* at 498, 763 S.W.2d at 654.

Based on the foregoing, we affirm the trial court's denial of Regions's motion for new trial. To accept the bank's

argument would be to condone double recovery for the same injury, which we will not do. Allowing Regions to have a second judgment for the approximate $2.6 million in damages would constitute double recovery. While the trial court's order does not contain a specific reason as to why it denied Regions's motion, it is of no consequence, as this court has repeatedly held that it will affirm the trial court if it reached the right result, even if for the wrong reason. *See, e.g., State Farm Fire and Casualty Co. v. Andrews*, 363 Ark. 67, 210 S.W.3d 896 (2005); *Warr v. Williamson*, 359 Ark. 234, 195 S.W.3d 903 (2004); *Bright v. Zega*, 358 Ark. 82, 186 S.W.3d 201 (2004). We thus affirm the trial court's order in this case.[1]

---

[1] We do not reverse that part of the trial court's judgment upholding the jury's verdict of $10.00 damages on the fraud claim. To do so would be to grant affirmative relief to Todd, who did not file a cross-appeal on this issue. *See Aycock Pontiac, Inc. v. Aycock*, 335 Ark. 456, 983 S.W.2d 915 (1998); *Wright v. Eddinger*, 320 Ark. 151, 894 S.W.2d 937 (1995).